FOX FILM CORP. v. CITY OF CHICAGO et al.

(District Court, N. D. Illinois. August 31, 1917.)

1. Injunction ⬦77(1)—Authority of Court of Equity—Issuance of Injunction.

Where the refusal of a municipal officer to grant the permit, required as a prerequisite for the exhibition of a moving picture, amounts in law to an abuse of discretion, whereby property rights are or will be injuriously affected, a court of equity has jurisdiction to enjoin such officer from refusing the permit.

2. Theaters and Shows ⬦1—Moving Pictures—Right of Exhibition.

The natural right of every man who has a moving picture film is to exhibit it; but for the good of society the right of exhibition may be denied, where it would be violative of laws or ordinances.

3. Theaters and Shows ⬦1—Moving Pictures—Exhibition—Refusal of Permit.

Under a municipal ordinance, providing that permits for the exhibition of moving pictures shall not be granted, if the picture be immoral or obscene, or portrays any riotous, disorderly, or other unlawful scenes, or has a tendency to disturb the public peace, a permit to exhibit a moving picture film, which contains scenes of torture that may be terrifying and horrifying, cannot be denied; the picture not being one falling within those prohibited by the ordinance.

4. Words and Phrases—"Abuse of Discretion."

"Abuse of discretion" does not necessarily mean willful intent to do harm, or actual exercise of the discretion with willful intent to violate the law; and such abuse is presumed where an officer, having discretion, acts wholly outside of the law, notwithstanding there is no evidence of an intent to so act.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Abuse of Discretion.]

In Equity. Suit by the Fox Film Corporation, a corporation, against the City of Chicago and others. Preliminary injunction issued.

Charles P. Schwartz, of Chicago, Ill., for plaintiff.
Leon Hornstein, of Chicago, Ill., for defendants.

ALSCHULER, Circuit Judge. [1, 4] I conclude from this presentation that this court has jurisdiction in a case where the refusal of the permit amounts in law to an abuse of discretion of the officer with whom discretion is vested, and whereby property rights are or will be injuriously affected. In this case of diversity of citizenship of the parties, this court would have jurisdiction generally. By an abuse of discretion is not necessarily meant a willful intent to do harm, or an actual exercise of the discretion with willful intent to violate the law, which in this case is the ordinance. Where the officer, having the discretion, appears from what is before the court to have acted wholly outside of the law, the abuse of discretion would be presumed, notwithstanding there may be nothing before the court from which to infer any deliberate intent to act outside of the law; and here, beyond the general assertion of conclusions made in the bill, there is utterly no showing that would impeach the motives of the chief of police and his assistant in the refusal to grant this permit, and I will assume for

⬦For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

the purposes of this case that there has been in the regular and usual way a refusal to grant this permit, that is, the general permit which was refused.

[2] It seems to me that this entire matter must be determined from the ordinances, which require the permit as a prerequisite for the exhibiting of a picture. I need not repeat the ordinance, but section 1627 undertakes to lay down the conditions under which a permit may be refused. The natural right of every man who has a picture film is to exhibit it. But, for the good of society, we recognize the right to require that an inspection and examination be made, and to refuse the exhibition where the tendency would be violative of laws or ordinances.

[3] Now, section 1627 of the ordinance undertakes to specify those conditions under which the officer, to whom the film is by ordinance required to be exhibited for the purpose of obtaining a permit, may refuse it. The officer would have no discretion to refuse a permit for causes which are not set out in section 1627, which is in fact the source of his power to refuse such permit. The ordinance provides that permits shall not be granted, if the picture is immoral or obscene, or portrays any riotous, disorderly, or other unlawful scenes, or has a tendency to disturb the public peace.

The second deputy, Mr. Funkhouser, has very frankly, fully, and presumably fairly stated in his affidavit, which has been filed, what he found with reference to this film. If he had found that it was immoral, that it was obscene or otherwise objectionable under the ordinance, I should be very slow to disturb his conclusion upon that proposition. I would not feel that it was the function of the court to substitute its judgment for the judgment of the functionary created by law to pass thereon; but yet I may, in making that statement, be according to him a larger power and a greater conclusiveness of his finding than is warranted by law; but, if he had so found, I would, as at present advised, be very slow to disturb this finding, in the absence of evidence that arbitrarily, fraudulently, or corruptly, or with absolute want of reason, he had refused a permit. But he frankly says that the motion picture film is not of a character which would be regarded as immoral or obscene or otherwise objectionable under said ordinance, if exhibited to adults only. That conclusion he supplements by stating more fully in his affidavit the nature of the picture. While he concludes that it would be objectionable under the ordinance if it were exhibited to children under the age of 21 years, yet he does not stop with that. He states wherein the impropriety exists, and very frankly points out what are the facts from which he concludes that as to children it does violate the ordinance.

From a perusal of his affidavit I find and conclude there is nothing that he stated there which, under the ordinance, would be considered immoral, obscene, or unlawful, or otherwise objectionable, but that the objection consists wholly in the horrifying nature of the tortures which are portrayed as inflicted upon the hero of the play, and his ultimate shooting by a firing squad. Now, I do not believe that from his own portrayal of the play, on his own depicting in his affidavit of the facts, upon which he bases his conclusion, his action is within the authority of the ordinance.

The amendatory ordinance of July 2, 1914, is peculiar. It proceeds upon the assumption that the picture has been found to be immoral, obscene, or otherwise objectionable, as described in section 1627; but, notwithstanding that, it empowers the chief of police to issue the permit for the exhibition of that picture, however immoral or objectionable it may be, provided only that those under 21 years of age are excluded from plays of the exhibition. Now, this finding, therefore, that it is not immoral or obscene, or otherwise objectionable under the ordinance as to adults, seems to me of itself would place the picture in the category of those which do not come within the prohibition of section 1627; but it is not here necessary, and I do not undertake to construe the amendatory ordinance. The mere fact that scenes of torture as described in Mr. Funkhouser's affidavit may be terrifying and horrifying does not bring the film within the purview of section 1627, which authorizes a permit to be refused only under the enumerated conditions of that section. In this view I need say nothing of the 20-odd affidavits of persons, some of whom happen to be known to the court, and some of them not known to the court, to the effect that the picture is not objectionable, that it is moral, and does not come within the objections enumerated in section 1627, aside from the statements of something over 100 persons who give it approval.

I do not know how far the court, in passing upon a preliminary motion of this kind, can rely on a mere statement, not made in the form of affidavits, and I do not consider them in passing upon this motion for preliminary injunction. I am satisfied, from the showing here, that the statement made in the affidavit is a truthful and sincere statement of Mr. Funkhouser, and on the facts of which as there stated he recommended refusal of the permit, and that accordingly the chief of police refused the permit upon grounds wholly outside of those enumerated in the ordinance, as grounds on which alone there is any power or right to refuse the permit.

Under these circumstances, I believe the preliminary injunction prayed for should be granted.