| 84 | 279 |
| 158 | 205 |

COMMISSIONERS OF HIGHWAYS OF TOWN OF DAYTON

*v.*

COMMISSIONERS OF HIGHWAYS OF TOWN OF RUTLAND.

1.   DEDICATION *of a bridge—acts of acceptance.*   Where a bridge, built, by private subscription, across a river dividing two towns, is donated to the public, if the commissioners of highways procure the levy of a tax to aid in rebuilding it, and open a road connecting the bridge with another road, and keep the same in repair, and, when the bridge is out of repair, nail a plank across the end of it to prevent travel over the same, and save the town from liability, these acts will afford almost conclusive evidence of

an acceptance of the dedication, and can not be overcome by light and trivial circumstances.

2. Bridge—*liability of towns to repair bridge on division line.* Where a bridge over a stream dividing two towns is recognized and accepted as a public bridge by the proper officers of each town, each will be liable to one-half of the expense of keeping the same in repair, and the liability may be enforced by suit at law.

3. Evidence—*effect of official acts can not be obviated by proof of intent.* Where an act is performed by an officer, in the course of his official duty, he can not be allowed to change the legal consequences resulting, by giving his private intentions. Where the acts of commissioners of highways amount to an acceptance of a bridge dedicated to the public, it is error to permit them to testify as to their intention when they performed the acts.

4. Town—*when not bound by acts of its officers.* It may be that, if officers of a town, such as commissioners of highways, are procured to do an act by fraud, it will not bind the town.

Appeal from the Circuit Court of La Salle county; the Hon. Edwin S. Leland, Judge, presiding.

This was an action, by the commissioners of highways of the town of Dayton, against the commissioners of highways of the town of Rutland, under section 21 of the Township Organization Law of 1861, to recover one-half of the expense of repairing a bridge over Fox river, which is the boundary between the two towns, both being organized under the Township Organization Law.

Under an act of the legislature, passed in 1837, a State road was located from Ottawa to Naperville, across Fox river, and through the towns of Dayton and Rutland.

In 1853, a free bridge was built, by private subscription, at the place where the State road was located across the river, and was used by the public as a part of the highway until in 1857, when it was carried away by the ice. Before the erection of the bridge, the travel on the State road crossed the river at a ford about one-quarter of a mile above the site of the bridge, but, after it was built, fences were constructed, a short distance above the bridge, across the road, and also above the ford, whereby the travel was thrown upon the bridge, and a road laid out by the commissioners of highways of the town

of Rutland. The bridge was rebuilt in 1857, at the same place. with funds raised by taxes levied by the towns of Dayton and Rutland, by an appropriation made by the board of supervisors, and by private subscriptions.

In 1868, the bridge being out of repair and unsafe, one of the commissioners of highways of the town of Rutland, with the approval of the others, nailed a plank across the end of it in their town, to prevent travel over it and injury arising from its unsafe condition.

Afterwards, in July, 1868. the commissioners of highways of the town of Dayton served a notice on the commissioners of the town of Rutland to aid in repairing the bridge, and that, unless they did so in twenty days, the commissioners of Dayton would proceed to make the repairs and claim of the town of Rutland their due proportion of the expense. The authorities of Rutland having failed to aid, the plaintiffs made the necessary repairs, and brought this suit to recover one-half of the expense. A trial was had, resulting in a verdict and judgment in favor of the defendants, and plaintiffs appealed.

Mr. D. P. JONES, and Mr. L. W. BREWER, for the appellants.

Mr. E. F. BULL, for the appellees.

Mr. JUSTICE WALKER delivered the opinion of the Court:

This case was before us at a former term (see 60 Ill. 58), and it is conceded that the facts, in all material particulars, are the same in this record as they were in that case. The bridge was, at first, built by private donations, in whole or in part, and the questions then, as now, presented were, whether the bridge had been donated to, and whether it had been accepted by, the public. That it had been donated, there can be no doubt, nor is that seriously controverted, and the evidence of acceptance by appellees is almost, if not quite, conclusive. The road commissioners, on a petition of a majority of the voters of their town, recommended to the

board of supervisors that a tax be levied of sixty cents on the one hundred dollars of the taxable property of their town, to aid in rebuilding the former bridge at this place.   The road commissioners then opened a road from the mouth of that bridge to intersect with the State road, and beyond and through the town, that had crossed at a ford about a quarter of a mile distant from the bridge.   They also worked and kept the road thus opened in repair.   They permitted the old road to be obstructed, so as to compel travel to pass over the bridge; and again, when that bridge got out of repair, one of the commissioners nailed a plank across the end of the bridge in Rutland, so as to prevent travel over the bridge, to relieve the town from litigation in case of accident resulting in injury to persons passing over it.

We said in the opinion, when this case was previously before us, that these acts all tended to prove an intention to accept, but, even if what was there said was correct, we did not say that these strong and convincing facts could be explained by light or trivial circumstances, or what the individuals acting as commissioners may have had in their minds.   We left this strong and convincing proof to be overcome by proof as strong, or stronger, than that offered by these several acts.   We, perhaps, would have made ourselves better understood if we had omitted the language, that the evidence tended to prove the acceptance of the dedication, and have said, that the facts proved a dedication, and that it was usual for the jury to find the intent; but, even under what was said, it was not intended that the jury should disregard the evidence that was before them.   In this case, there seems to be absolutely no pretense for saying that the evidence afforded by these acts has been overcome.

An officer, when he performs an act, in the course of his official duty, can not be heard to say that he intended to do one thing, or some other.   The law attaches consequences to the act, without reference to the private intention of the officer.   He has no power to explain away his legal acts, or their legal effect.   To do so, would give the intention of the officer

effect, rather than the law.   When the case was before us previously, we held that the commissioners could not limit the legal effect of their acts, in asking the levy of a tax on their town, by a protest that it should not render their town liable to repair the bridge; nor could we anticipate, on another trial, that it would be claimed that the commissioners could testify as to their secret, unexpressed protest or intention, where they did other acts indicating an acceptance, when we had held that they could not avoid the legal effect of another act of acceptance, by a written protest against the legal effect of the act, in the same paper evidencing the act, and a part of the *res gestæ*. It was, therefore, error to permit the commissioners to testify as to their intention when they performed these acts.  As well permit an officer to say he did not intend the legal effect of a levy on property, or service of process, or other official act; and so far as appellees' instructions place the acceptance on the intention of the commissioners, they are wrong, and should not have been given.

It may be possible that, if it could be shown that any of these acts of the commissioners were procured to be done by fraud, then they would not be binding.   Hence, we can not say they are absolutely conclusive; but these acts are strong evidence, approaching conclusive proof, and, as we have said, can not be overcome by slight and unsatisfactory evidence. Appellees have not proved, or attempted to prove, that any one of these acts was procured or induced by fraud, much less all of them, nor that they were not done voluntarily, in view of all the material facts in the case.

To permit such officers to go on and perform official duties, in the usual course, and then to be heard to say that they did not intend to bind themselves or their town by such acts, would well nigh destroy all liability of such bodies.   Suppose they had met with the commissioners of the town of Dayton, ·and agreed to erect the bridge, each town furnishing its share of the funds, and it had been so erected, could it be contended that the commissioners of either town could be heard to say that they did not intend to bind their town for repairs that

should subsequently become necessary? The same reason applies with full force where these officers have deliberately done an act evincing an acceptance of a dedication of a bridge from private persons.

The evidence clearly proves an acceptance in this case, and the finding of the jury is so palpably against the weight of evidence that the court should have set the verdict aside.

The judgment must be reversed and the cause remanded.

*Judgment reversed.*

Mr. JUSTICE DICKEY did not participate in the consideration of this case.