UNION STEAM-BOAT Co. *et al. v.* CITY OF CHICAGO *et al.*

(*Circuit Court, N. D. Illinois.*   August 16, 1889.)

MUNICIPAL CORPORATIONS—PUBLIC IMPROVEMENTS—INJUNCTION.
  Where the action of a city in executing a public work is within the scope of its authority, and free from fraud and corruption, it will not be enjoined, though the methods adopted result in special damage to complainant.

In Equity.   On motion for injunction.
*Schuyler & Kremer* and *Sidney Smith*, for complainants.

FULLER, Chief Justice.   I assume for the purposes of this motion that the complainants sustain by reason of the acts complained of peculiar damages of a different kind from those sustained by the general public. The test is not one of degree but of kind, and many averments of the bill present only the case of an alleged obstruction of a public and common right, resulting in injuries to the complainants and the public, the same in kind.   But it is not necessary to rule upon objection in this regard, in the view that I take in the premises.

The public work in question is being carried on by the authority of the city of Chicago, in pursuance of power to that end vested in the municipality.   In *Escanaba Co.* v. *Chicago*, 107 U. S. 678, 2 Sup. Ct. Rep. 185, it was held that "until congress acts on the subject, the power of the state over bridges across its navigable streams is plenary;" and the leading cases, *Willson* v. *Marsh Co.*, 2 Pet. 245, and *Gilman* v. *Philadelphia*, 3 Wall. 713, together with others, were cited and approved.   In these and numerous other decisions of the supreme court, building bridges and the like are assigned to that class of subjects which can be best regulated by rules and provisions suggested by the varying circumstances of different localities, and limited in their operation to such localities respectively. The nature of the subject is not such as to require the exclusive legislation of congress.   The *Escanaba Case* involved an ordinance of the city of Chicago, and Mr. Justice FIELD, in delivering the opinion, says that "nowhere could the power to control the bridges in that city, their construction, form, and strength, and the size of their draws, and the manner and times of using them, be better vested than with the state, or the authorities of the city upon whom it has devolved that duty."   This extract is quoted by the supreme court of Illinois in *McCartney* v. *Railroad Co.*, 112 Ill. 611–635, and that court thus proceeds:

"The city we look upon as the representative of the state, with respect to the control of streets, and highways, and bridges, within the city limits.   *   *   * The state itself, no doubt, might construct the bridge.   It might, as the legislature has here done, vest the local government of the city with authority to build the bridge.   But it is claimed that the authority is reposed only in the city itself to build bridges, and is a power which is incapable of being delegated by the city to another.   We do not consider that there is any delegation of the power in the case.   The city, through the corporation, does build the bridge. It matters little by what hand the bridge is built, or who lets the contract for

the construction. The essential thing is determining whether the public interest calls for a bridge, and where and in what manner it shall be built, and this is done by the city authorities."

It is not contended that the city has proceeded or is proceeding in excess of its powers, but it is insisted that the work ought to have been authorized or directed at a different season of the year, or commenced earlier, and prosecuted with greater dispatch, and that the obstruction at this time is such as to render the city's action so unreasonable as to justify the interposition of the court to arrest it. But the power to make the improvement necessarily implies the right to determine upon the plan and method of doing it; and the general rule forbids interference by judicial authority with such determination, when exercised in good faith, within the scope of the power conferred.

I do not think it can be reasonably claimed that the record before me makes out fraud, corruption, or unfair dealing amounting to fraud, and, in my judgment, the case does not fall within any exception which might be held to justify the interference applied for. The motion for an injunction must therefore be denied.